May it please the court, I'm Anthony Volpe and I'm here with my associate Ryan Miller on behalf of Campagnolo, the plaintiff appellee, or appellant and cross appellee. Your honors, this case is a case of comparative advertisement and with the court's permission, I will step to the easel and make a mark on the easel to show the one part of the two crank sets that were being compared in this advertisement that do not form part of the crank case weight. So if I have the court's permission, may I? Well, the problem is if you speak from over there, you won't be recorded, so you're free to mark, but don't speak. Your honor, what I have marked with the X's are the two parts, and generally when EFBE, the German testing company, was provided these parts, what the testing company was required or requested to do was to decide the entire weight of the crank sets. And so the entire weight of the crank set represents all of the parts you see, except for the part that is crossed out, which is typically considered to be the lower case, the bearing for the shaft to go through on the bicycle bottom bracket. If I understand it correctly, the ball bearings on the Campagnolo set are attached to the top part of the crank shaft, is that correct? That's absolutely correct, your honor, and that is one of the arguments that we made both below and our brief, that these were not similar crank sets. When you do comparative advertisement and you say that a particular part is similar in design, then it has to have a similar construction. Well, to the extent you're asking us to do otherwise, aren't you asking us then to overrule the jury's determination if the jury already made that determination? Yes, your honor, and I think there are two reasons why this court should do that. The first is that the court below allowed the defendants to go way beyond the four corners of the advertisement. The particular advertisement that was published was a test of, although six crank sets have been tested by EFBE, only five crank sets were in the ad. A crank set very similar in construction to the Campagnolo crank set was eliminated. And if in the record when you look at the EFBE reported the crank set, you will see that that particular crank set had better results and it was eliminated. And we submit that that was a willful elimination of that crank set to pitch this against Campagnolo, which is considered to be the premier brand. And what happened in the district court was the district court allowed a lot of testimony to come in about average weights of crank sets, manufacturing variations, which are known to all manufacturers, and actually went so far as to allow them to introduce evidence regarding the titanium crank set, which was a more expensive crank set that was developed after the ads and was never weighed by EFBE. So the way that the evidence came in before the jury in the district court totally, I think, confused the jury as to what crank sets they should be looking at. Well, were you not permitted to argue any of this before the jury? I thought this was all. Your Honor, we did argue it, but there's a different, you know, under 403, it's fairly clear that even if an argument, evidence might be relevant, you should not introduce it if it leads more likely to confusion and prejudice. Here they were permitted to go outside the four corners. So an abuse of discretion standard would apply to this? Yes, Your Honor, but we believe that there's, because of the cumulative errors, I think this circuit's law is that when there are a number of cumulative errors like this, there's presumed prejudice and confusion and that a new trial should be granted. If one is putting forth an ad that says- Well, if that's the case, it would be helpful to me if you could just bullet point before you argue further what you think the cumulative errors are that justify reversal in light of an abuse of discretion standard. Okay. Starting first, Your Honor, with permitting the defense to produce information about crank sets that were not the tested crank set. That's one. Information about manufacturing variations in crank sets when, in fact, only one crank set was weighed. Allowing them to talk about the products that were possibly still available in distribution chains when, in fact, they could never demonstrate that the product that was advertised in the ads was, in fact, available at the time the ads were being produced. Beyond that, the court allowed them to bring in evidence from the Taiwanese manufacturer of records that were purported to show that they had produced these crank sets. And if you look at those records, I believe they're Exhibits 23 and 99, you will see that there is not a single piece of information on those records that would indicate what the weight was, when they manufactured what they were, and the court allowed all of that to come in to the jury. So you objected to all of that? Yes, Your Honor. And the judge overruled your objection? Yes, Your Honor. And you were able to argue to the jury that these are not really relevant because you only have to decide this. Forget about all that. And the jury came down against you. Yes, Your Honor. Now, you filed a motion for new trial or judgment in OV? Yes, Your Honor. In which you pointed out all of these errors. Yes, Your Honor. And the district court disagreed with you? Yes, Your Honor. And you are, and your argument to us is essentially they were all wrong. And I maintain that today, Your Honor, yes. And what is the closest case where we have ordered that there should have been a judgment in OV on the basis of kind of cumulative evidentiary errors that all are supposed to be measured on an abuse of discretion? I believe possibly Dorn, Your Honor, but I also believe that the Palm case and the Saffron-Sod cases, both make the same point. When you do comparative advertisement, you have a particular obligation to be scrupulously honest. And when the district court allowed the defense of that advertisement to be expanded, it was in a sense the pebble in the pond argument. When they allowed it to be expanded to bring in crank sets that were not tested, when they allowed it to bring in a titanium crank set, which the court itself, the district court itself in a footnote, acknowledged that there was never any showing that there was a crank set. See, this is something that I'm a little confused on as to whether or not you are attacking each of the evidentiary rulings or whether you are saying that there is an error of law in that the district court should, as a matter of law, have excluded any evidence that in any way related to anything other than what you think is the proper comparison. I think both, Your Honor. I think in the first instance when we objected to permitting them to use weight variances and the titanium and so forth and in denying our motions in limine, we think that was a matter of law. That the judge was wrong because he allowed them to present a defense that went beyond the four corners of what they said in the comparative advertisement. Beyond that, when we actually got to trial, then we say that those errors were cumulative and that they confused the jury. Here is a case where the jury came back and said that there was no false advertisement, but the managing director of the defendant testified that EFBE did not weigh crank arms. EFBE did not calculate ratios. They had clear testimony from the very person who was responsible on the part of FSA for these ads to state that the ads misrepresented what EFBE had done. And yet the jury came back and found that there was no false advertisement. Again, it seems to me that maybe you're off Judge Schroeder's question a little bit, but I want to nail you down on something. It seems you've raised a new argument now that the statement that EFBE, well, you're saying it's literally false. The advertisement is literally false because EFBE did not calculate ratios. Yes, Your Honor, but that's not a new argument. That was the argument below. No, no, no. I realize it's not a new argument, but it's separate from your response to Judge Schroeder. And if I said new argument, I apologize. But you made that argument to the jury, and the jury determined that that wasn't a sufficient basis on which to determine that, or we presume that they made the determination that that wasn't a sufficient basis on which to determine that the advertisement was literally false. Don't we? Your Honor, when you have an admission that the advertisement is literally false, it seems to me that when a jury comes back with a decision contrary to that, that it's clearly a jury decision contrary to the weight of the evidence. It is, if one looks at Palm and Southland, it is, I think, very clearly the law in this circuit that when you publish comparative advertisements, and those comparative advertisements cannot be supported by the data behind those, that that's a literally false advertisement. And in this case, the ads were clearly false. I mean, there's no dispute about that on the record. Well, I mean, the dispute on the record is, and I assume that it was the dispute that went in front of the jury, that the measurements, the weights were taken by EFBE, and the act of calculation is merely a mathematical exercise given the weights that EFBE came up with. Wasn't that the argument presented before the jury? No, Your Honor. Before the jury, there were actually two arguments on weight. One went to the totality of the weight, which is what you see there with the part X out. In other words, they took a part, they put it on the scale, it weighed X. Then the only other thing EFBE did was that they did a stiffness test on the arms. They never weighed any other components. So when the charts and the ads were presented saying that EFBE measured the stiffness, the weight and stiffness ratio, that is not true. EFBE only measured the weight of the entire crankset and then the stiffness of the arms. EFBE never presented any information relative to how one should calculate stiffness, and in fact it was admitted at trial that the sister company in Italy used a different formula for calculating weight to stiffness. It was also admitted at trial that Mr. Van Eckevoort, who is the managing director of FSA, changed the formula because he found a methodology of making the results look better. All of that, though, ended up being attributed to EFBE. The ads very clearly say that EFBE and FSA present these test results. So the end result of it is that it's very clear that they were presenting these as the work of EFBE or they were the approved work of FSA as part of EFBE's work. EFBE never did any of this. And if you go further, the cranksets that came about after this particular model, initial production model was tested, were never weighed by EFBE and the titanium crankset was never weighed by EFBE until this litigation. So any effort to say that those cranksets are all covered because they were the K-Force Light, had the brand name K-Force Light, is false in its own right because they were not part of the test which EFBE did. I want to save some time, so if I may quickly, I want to turn to the dismissal of Tian Xin on summary judgment. I'm frankly puzzled by that because Judge Martinez himself reviewed the Cork Creek cases and the two cases that were filed in the western district, this district for Tian Xin where they said that FSA was its wholly owned subsidiary. The court below in allowing us to serve FSA for Tian Xin found that the relationship between Tian Xin and FSA was almost chameleon-like. They would, depending on where they wanted to be at a particular time, they were either totally connected or totally disconnected. There was no question that FSA was the face of Tian Xin for at least North America and Australia. And yet the judge allowed them to put in last-minute declarations and affidavits in addition to correcting or changing their deposition testimony as part of their motion for summary judgment and then found that there was, no jury, no reasonable jury could have found based on the tangled web that they have weaved through these three or four cases in North Carolina and this district that Tian Xin and FSA were in fact one entity. And everything that happened with respect to producing these crank sets, distributing and so forth was done through FSA entities by Tian Xin. And we submit that dismissal of Tian Xin clearly was wrong. There were many factual issues regarding that relationship and they should have all been presented to the jury. I'll save my time. Okay, thank you. Good morning. My name is Robert Adolph. I'm the attorney for Full Speed Ahead Incorporated and Tian Xin Industries. Since we have a cross appeal on the attorney fees, could I reserve a couple of minutes? Well, we normally don't do that. Okay, all right. I'll make my presentation. That has a tendency to put things into the afternoon. Sure. Let me first address the appeal of the jury's verdict. Campagnolo, in this case, has raised no legal issues in appealing the jury's verdict. It is appealing based on its contest of the facts. It's essentially arguing that the overwhelming amount of evidence, both testimonial and documentary, received over two weeks by the jury. And this evidence from our part included three materials and testing engineers, one from Tian Xin Industries who designed this crank set from day one, one from the in-house testing and design engineer at the Italian distributor's headquarters who went out and obtained the tests on the initial crank set, the 630-gram version, which was initially tested by EFPE. Mr. Volk is incorrect, however. EFPE did, during the course of its work, test the EN version, and it did test the titanium version. Well, the advertisements weren't based on those testings, were they? The test results of the EN version are in evidence. I simply don't recall whether the test results of the titanium are in evidence from EFPE. However, we engage, in addition to the engineering experts, the in-house engineers. If they aren't in evidence, there was no argument made to the jury about test results on either the titanium or the European model, was it? Were there? Yes, there were. We had all these retested by integrated technologies, and Mr. Grant Palmer introduced a comprehensive report, which included all of the product characteristics of the titanium. And then we introduced summary charts in evidence, which tracked all the results, showing that every single permutation of the K-force light was vastly superior in its product characteristics. Thank you. And I didn't complete the end of my question. There wasn't any evidence put before the jury that the advertisement text was based on the testing of the titanium or European versions, was there? The advertisement, which referenced the EFPE tests of the initial version, related to the product characteristics of that initial version, which at all times when the answer to my question would be no. There was only one chart ad, and that was based on the original set of testing. EFPE did subsequent testing of the models as they came out, and we did a series of verifying tests to support the EFPE conclusions at time of trial. The core issue in the lawsuit by the plaintiff here is the gist of the ads. The gist of the ads, message of this ad, was that Full Speed Ahead, being a new innovative company using carbon fiber technology, has now produced a very ultra-lightweight crank set, which has, because of its lightness and its stiffness, has better product characteristics than the four or five other brands tested. And every allegation contained there is true. Every allegation we proved at trial, through the testimony of three engineers and three expert witnesses, including a... And you're talking about this chart? Correct, correct. And Campagnolo commenced this action based on the second version of this, which was developed for the European market, because the European market had a new set of standards going into effect in January of 2007. And so some very minute changes were made. This is an EN version. This is the original version. This simply... This looked like this. This simply doesn't have the decals and the clear coat on it. But the only difference between these two is that this one has... Each crank arm has about 12 grams more of carbon on the inside to make it slightly stiffer. Otherwise, they're absolutely identical. The titanium version is simply the EN version, where this is a titanium axle, this is a steel axle. They look virtually identical, but this is about 25 grams lighter. So this gets down to actually a lighter weight. This is, without the bottom bracket, this is about 500 grams, not 503. But all of these variations, and they're just minor variations of the K-Force light, all meet the product characteristics and the claims of superiority that were contained in the ads. There's no question about that. And when all this evidence got in front of the jury, and the failure of Campanula to really even address all of the other elements, materiality, deception, they had no injury whatsoever. As a trial court ruled in the motion for a new trial of JNOV, there was overwhelming evidence, substantial evidence, to support a finding that the jury could have found fault with every single element. And there was a question whether they made any proof of any element, and we believe they didn't prove any element whatsoever. And if you take this lawsuit in perspective, sliding into the second part of our cross-appeal here, it makes no sense for a rational plaintiff to spend likely over a million dollars squabbling over a few grams of weight unless there's another motive, unless there's an overtone of abuse here. We weren't on a level playing field. Well, we see some remarkable litigation where money is spent, and sometimes it's hard for us to understand why, but I'm not sure that that gives rise to an inference of abuse. Well, we believe that the trial court simply got it wrong. The trial court, first of all, whether this is an exceptional case or not, in the Ninth Circuit, you deal with elements of whether it's groundless, unreasonable, vexatious, or in bad faith. The trial court said he thought it was a close case. Well, in the trial court's order, I believe he just simply misstated or misunderstood the facts here. And that basis, the understanding of the law and its application of the law. What can he misunderstand? You're defending every judgment he made along the way. Well, on the attorneys' fees, he stated, and we argued, first of all, failure to properly investigate a claim can be found to be one of the criteria of an exceptional case. Every witness from Campagnolo testified upon my examination. They did no investigation of the U.S. market. They based their whole case on the EN version they bought in their little town of Vicenza, Italy. They never looked at what models were sold in the United States. They denied any knowledge of the initial version, even though our documents show we sold over 1,100 of those. There isn't any dispute, though, that EFPE did not do the ratio calculation, is there? The ads never state EFPE did the ratio calculation. EFPE was hired by Mr. Sala to do measurements, and they measured weight and they measured stiffness. And the ads say EFPE measured measurements. The ads were read to imply that EFPE made the ratio calculation? I think as our engineers testified, the ratio calculation is one number over another. It was made by our engineers based on professional measurements made by EFPE. There is no question that our calculation is correct. Without even getting to the issue. Yeah, it says stiffness is measured by the independent testing firm EFB, but the main message here is new tests from FSA and EFBE, which, you know, tends to say that EFBE is beyond, tends to suggest that they're behind everything. You know, they're jointly presenting this. Well, EFBE was hired for one specific purpose, and that's to do the tests, because they have the more complicated lab equipment in order to do the stiffness test. And so they were hired to do these measurements for comparison purposes. I don't question that. I'm just looking at the ad. And so when the ad says that EFBE was picked because they're a well-known testing lab and our clients use those for the certifications, they were picked because they had this expertise to do the stiffness test, and they did the weight test. And so when the ad stated they were involved, Campagnolo would prefer to say they weren't involved at all. That's simply not true. They did the measurements, and the ad says they did the measurements. And there's nothing false about that. There's nothing false. They haven't claimed the results are false. They haven't put any evidence on whether it would be material, it would influence a bind decision if their engineer did a simple division, or whether EFBE's engineer would do a simple division. There's none of that. And the jury didn't buy it either. And the jury heard all this evidence, and they heard all those arguments, and they very quickly rejected all of these claims and brought in a defense verdict. And Mr. Volpe and Campagnolo simply don't like the verdict. They just want their evidence to be believed, and that's what is the heart of this appeal. But we believe we simply weren't on a level playing field here. You have a $150 million company trying to drive a $7 million company underwater, and to that extent they did win this lawsuit. We believe they have to do a far better investigation than they did. They did no investigation. And when that was proved wrong, they threw a bunch of other very spurious claims against the wall, dragged this litigation out, asked for continual more discovery and new trial dates just to pile on these costs. And we believe if there's a definition of groundless and unreasonable, this is one of those cases. And we've attempted to detail all those facts. We believe that Judge Martinez didn't understand. He made a comment that he was confused as to which model was the titanium and how you'd tell the difference. Well, it says titanium right on the price set. And on the price sheets, which were introduced into evidence, they cost $100 more because of the lighter weight. I mean, I can't conceive how. Were there any requests for sanctions or sanctions imposed with respect to discovery? Yes. Yes, we received two sanction awards. So unless you have any other questions on the underlying, I'll reserve it. No, we're not going to get any more time. Oh, that's right. Would you say what you understand the relationship be with the Taiwanese company? The Taiwanese company, Tenshin Industries, is a manufacturing plant. Taiwan is very well known for the carbon fiber technology. They make full-speed-ahead products. They make gravity products. Does it have any corporate relation to? There's no corporate relationship. It's owned by an extended Taiwanese family. And one of the members, Ms. Yudi Chang, owns Full Speed Ahead, and she's the half-owner of the Italian company. The Italian, the whole European distributorship is half-owned by an Italian. That company is massively larger than the U.S. company.  But Mr. Van Ankervoort runs the company. They simply buy the parts at wholesale, and they advertise them as they see fit in the United States. They prepare the ads. They have the advertising budgets. And I think all the testimony was undisputed that Tenshin had no involvement, had no knowledge. They don't even speak English, hardly. And so that's why they have the North American company handle all the advertisement in North America, and that's why they have, again, for language issues in Europe, they have the Italian company handle all the advertising, create all the advertising over there. So they just manufacture? They just manufacture. And they had no responsibility for the ads? No responsibility for the ads whatsoever. They don't have any website that advertises Full Speed Ahead. They sell parts. They sell these parts not only to Full Speed Ahead, Inc. in the United States. They sell also directly to manufacturers all over Asia, where most of these bikes are made. Thank you. Your Honors, if I may, first I'd like to address the question that Judge Schroeder had about the sanctions. There were, in fact, two sanctions, and both times those sanctions came over arguments relative to the fact that nobody had recorded waits for the crank sets. This goes back. That first sanction was over the inability of us to have recorded waits. When the court ordered us to do something relative to recorded waits and variations, we went back and had our engineers try to, if you will, reconstruct the data from current data. And that was found not to be sufficient. So in both cases we submit that, A, the information was not even relevant. It should not have been requested, but the problem was that it had. And I want to also address quickly two points. My colleague said that EFBE was never presented as the person or the entity that did the testing. If you look at AIER 999, it contains the statement, according to German testing firm EFBE, the K-Force light has a better stiffness-to-weight ratio. We submit that that's a direct attribution to EFBE. Well, but you don't deny that EFBE measured the stiffness. Yes, but nothing about stiffness-to-weight. And despite what counsel says, there's an issue over what stiffness-to-weight is. If you look at the Italians, they took stiffness-to-weight in one form. When you look at the way stiffness-to-weight was done by FSA, they took the two numbers, put them together, and calculated an average. They calculated the average because it gave them a better number than using the numbers that they had from EFBE's testing. So that calculation was different. Likewise, at AIER 841. Calculation, but the measurement remains. We did not, we had no argument, Your Honor, with the fact that EFBE made the stiffness measurement. And then also at AIER 841, there's a statement, stiffness-to-weight ratio measured by German independent testing firm EFBE. We submit that both of those are literally false. Another issue that I'd like to address relative to the attorney's fees, and it makes a part of this concern about the fact that this was not defended on the four corners of the ad, FSA was never able to produce a single crankset like that crankset that was in the test. Their argument was that the Italians made an investigation based on what was in the marketplace rather than the best available crankset. The reason we could not find that crankset was it was not in the marketplace. And the best excuse that FSA had for why we couldn't find it was it's someplace in the distribution chain and they didn't know what distributors had it. Now if FSA can't find it, how does a competitor who's looking for it find it when it has no basis, no way to find it? So that first crankset was never commercially available. There's been no proof. The evidence that they brought in from Tianxin were not business records as we pointed out. They did not have any weight information. They did not have any technical data. The other point I'll make, Your Honor, is contrary to what was said about the website, if one goes to FSA's website, it's very clear that the FSA website announces everything as Tianxin, which is TH Industries. It's not said as Tianxin. It's TH Industries and FSA present all these things. And we submit that the fact that the FSA, when FSA was incorporated and came into being, Tianxin pulled out of the U.S. market. It was a wholly owned subsidiary for certain, and it was in fact their agent in the United States for the distribution of the products that Tianxin ships into the United States. And so we submit that there's a clear agency relationship and they're responsible for the ads. To say that they had nothing to do with this really flies in the face of the fact that they provided all of the We only reached that, is it correct, if we find in your favor on the merits, right? That's right, Your Honor. I agree. If there's no false ad, then yes. Did you produce evidence that they were a wholly owned subsidiary? We did not at the trial, Your Honor. We had produced that before, and in fact, Judge Martinez had found that. The fact that Tianxin or FSA was a wholly owned subsidiary of Tianxin was part of Judge Martinez's decision that said that we could serve Tianxin with the amended complaint. I'm sorry, we could serve FSA with the amended complaint as the agent of Tianxin. And also, if you look at the cases out of North Carolina, they're very clear, as they say, that this is almost like a chameleon-like relationship. And what was the evidence that they were the subsidiary? Their own statements, Your Honor. They had made statements that Mr. Van Eckevort was authorized to make settlements and agreements on behalf of Tianxin. And also, he sent letters to customers representing that they were doing it on behalf of Tianxin. You didn't have actual corporate documents? No, Your Honor. We had telephonic depositions of them, and all the documents provided were in Chinese. And while they did have some problems with the English language, Yodi Chang had a fairly good understanding of the English language, and she clearly testified that the reason Tianxin allowed them to use the FSA trademark was because they were, in a sense, in the same entity, and everything went to the benefit of the trademark. Okay. Thank you. Your Honor, you have more than used your time. Thank you. The matter just argued is submitted for decision.
judges: Snow, Schroeder, Noonan